UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x
                              :
KEVIN CAFFREY,[1]             :
                              :
         Plaintiff,           :
                              :        06 Civ. 3982 (KMW)(DCF)
              v.              :        Opinion and Order
                              :
MICHAEL J. ASTRUE,[2]         :
Commissioner of Social        :
Security,                     :
                              :
         Defendant.           :
                              :
------------------------------x

WOOD, U.S.D.J.:

         Plaintiff Kevin Caffrey ("Caffrey") brings this action

pursuant to 42 U.S.C. § 405(g), seeking review of a determination

of the Commissioner of Social Security ("Commissioner") that

Caffrey is ineligible for Social Security Disability Insurance

("SSDI") benefits.

         Both Caffrey and the Commissioner have moved for judgment on

the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

---

[1] In his most recent submission to the Court, Plaintiff
states that the correct spelling of his last name is Caffrey,
rather than Caffery, the spelling used by both parties in
previous submissions to the Court.

[2] Pursuant to Federal Rule of Civil Procedure 25(d)(1),
Michael J. Astrue, who took office on February 12, 2007 and is
the current Commissioner of Social Security, has been substituted
in this action for his predecessor in office, Joanne B. Barnhart,
the defendant named in Plaintiff's Complaint.

Caffrey argues that the Court should vacate or reverse the Commissioner's decision below; the Commissioner argues that his decision below should be affirmed.

Magistrate Judge Freeman has issued a report and recommendation (the "Report"), familiarity with which is assumed, addressing these motions.  The Report recommends that the Court (1) deny Caffrey's motion; and (2) grant the Commissioner's motion.

Caffrey objects, arguing that the Report fails to recognize that the Commissioner committed legal error.  Specifically, Caffrey argues that the Commissioner violated 20 C.F.R. § 404.1529 ("§ 404.1529") by discrediting Caffrey's allegations of pain solely because objective medical evidence did not substantiate them.

Caffrey's objection has merit.  The Court therefore does not adopt the Report.  Rather, for the reasons stated below, the Court (1) grants Caffrey's motion; (2) denies the Commissioner's motion; (3) vacates the decision below; and (4) remands this case, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further proceedings consistent with this opinion.

I.  Background

The Court summarizes here the facts and procedural history most relevant to the Court's instant decision.

A.  Caffrey's Disability

2

Caffrey is a former New York City police officer and firefighter,[3] who alleges that he is disabled, and unable to work, because of an injury to his right ankle, and pain in both feet.  (R. 124-25.)  Specifically, Caffrey alleges that the pain in his right ankle and feet is so severe that he cannot stand or walk for any prolonged period of time, precluding him from any substantial gainful activity.  (R. 124, 280.)

1.  <u>Injury and Resultant Surgeries</u>

Caffrey's alleged disability stems from an April 1998 rupture of his right Achilles tendon, and the three resultant surgeries that followed.

First, on April 15, 1998, Caffrey underwent surgery to repair his ruptured tendon, and to reestablish appropriate tension therein.  (R. 201-02.)

Approximately six months later, an MRI detected that a dense band of painful scar tissue had formed in Caffrey's ankle, near the surgery site.  (R. 204.)  On December 9, 1998, Caffrey

---

[3] From July 1983 until November 1989, Caffrey worked as a New York City police officer.  (R. 125.)  From November 1989 until his injury in April 1998, Caffrey worked as a New York City firefighter.  (<u>Id.</u>)

Following his injury, Caffrey did not work for over a year. In mid-1999 Caffrey returned to work with the fire department, where he was reassigned from his previous job as a firefighter, to a new job answering telephone calls at a fire-training center. (R. 274-77.)

In June 2001, Caffrey stopped working entirely, alleging that the pain in his ankle and feet rendered him totally disabled.  (R. 124.)

underwent a second surgery to excise the scar tissue.  (R. 207-08.)

Ten days layer, Caffrey's wound spontaneously reopened.  (R. 209-10.)  On December 22, 1998, Caffrey underwent a third surgery to remove necrotic tissue, and to properly re-close his wound. (Id.)

### 2.  Caffrey's Allegations of Pain

Following his three surgeries, Caffrey continued to report severe pain in his right ankle.  (R. 236.)  Caffrey also began reporting severe pain in the bottom of both feet.  (Id.)  Caffrey alleges that, as of June 2001, the pain in his ankle and feet became so severe that he could no longer work.  (R. 124.)

### 3.  Medical Tests

Numerous examinations of Caffrey by his treating physicians over the years have failed to identify an exact cause of, or treatment for, Caffrey's ongoing pain.  In January 2001, an MRI of Caffrey's right ankle showed that although Caffrey's Achilles tendon was "diffusely enlarged," it had an "excellent appearance post repair."  (R. 166.)  An MRI in January 2002 similarly revealed no "definite abnormality" in Caffrey's right heel.  (R. 234.)  A March 2002 scan of Caffrey' right ankle showed no osseous or soft tissue abnormality.  (R. 189.)  The results of an April 2002 bone scan were "unremarkable."  (R. 187.)

### 4.  Opinions of Caffrey's Treating Physician

In April 2002, Dr. Small, one of Caffrey's treating physician, concluded that he could not "totally explain all of [Caffrey's] pain," and that Caffrey would likely have to "live with [it]." (R. 165.) Dr. Small opined that, because of this pain, Caffrey was disabled from any type of labor that required him to run, jump, squat, or walk for any length of time. (Id.)

In September 2005, Dr. Small further opined that Caffrey had a "major problem" with both standing and walking, and that Caffrey's walking was limited "to less than 15-20 minutes at one time." (R. 267-68.) Dr. Small noted, however, that Caffrey had no problems that he knew of with regards to sitting or lifting. (Id.)

B. Procedural History

   1. Application

Caffrey filed his instant application for SSDI benefits with the Social Security Administration ("SSA") on October 15, 2002, alleging an onset date of June 30, 2001.[4] (R. 106-09.) The SSA denied his application for benefits on January 23, 2003. (R. 38-41.)

   2. Hearing

Caffrey then requested a hearing before an Administrative Law Judge ("ALJ") on the issue of his disability. (R. 150.) On

---

[4] Caffrey first applied for SSDI benefits soon after his initial injury. The SSA found him temporarily disabled from April 1998 to mid-1999. (R. 212-15.)

September 15, 2005, Caffrey appeared before ALJ James B. Reap.[5]
(R. 270.)

The ALJ first questioned Caffrey as to why he was unable to
perform "sedentary work," which is defined, pursuant to SSA
regulations, as work in which a claimant sits for at least six
hours, and stands or walks for at most two hours, during an
eight-hour day.[6]  (R. 279.)  Caffrey responded that the pain in
his right ankle and the bottom of his feet prohibited even the
minimal standing and walking that such a job would require.  (R.
280.)

The ALJ also questioned Caffrey about his daily activities.
(R. 281-96.)  Caffrey stated that his daily schedule included
getting up, making toast, reading the newspaper, walking around
the house, showering and shaving, watching movies, and swimming
and walking in the pool.  (R. 288-95.)  Caffrey also stated that

---

[5] Caffrey was represented by an attorney at the hearing.
(R. 270.)

[6] Sedentary work is defined, pursuant to 20 C.F.R. §
404.1567, as work that "involves lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like
docket files, ledgers, and small tools.  Although a sedentary job
is defined as one which involves sitting, a certain amount of
walking and standing is often necessary in carrying out job
duties.  Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met."  20 C.F.R. §
404.1567 (emphasis added).
Occasionally means occurring "from very little up to one-
third of the time."  SSR 83-10.  In a sedentary job, "periods of
standing or walking should generally total no more than about 2
hours of an 8-hour workday, and sitting should generally total
approximately 6 hours of an 8-hour workday."  Id.

6

on a semi-regular basis, he was able to attend his children's sporting events.  Id.  Caffrey noted that he could, when necessary, drive up to forty miles round-trip, take his children to the library, and run certain errands.  Id.

Caffrey claimed that he was unable to, inter alia, exercise, take walks, do chores, or do any task that required him to stand for any significant period of time.  (R. 285-87.)

### 3.  ALJ's Decision

On October 20, 2005, the ALJ denied Caffrey's application for SSDI benefits.  (R. 26-34.)  The ALJ found that Caffrey, by virtue of his Achilles tendon injury and the three resultant surgeries, suffered from a severe medically determinable impairment.  (R. 30.)  The ALJ ultimately concluded, however, based on Dr. Small's opinions and Caffrey's testimony about his daily activities, that Caffrey retained the residual functional capacity ("RFC") to perform sedentary work.  (R. 31.)

In evaluating Caffrey's RFC, the ALJ considered Caffrey's allegations about the pain and functional limitations resulting from his impairment.  The ALJ concluded that Caffrey's allegations were not fully credible, however, because they were not corroborated "by objective medical evidence to the degree purported."  (R. 31-32.)

Caffrey appealed the ALJ's decision to the SSA Appeals Council, and the Appeals Council denied review.  (R. 4.)  The

7

ALJ's decision thus became the final decision of the Commissioner.  (Id.)

    4.  <u>Instant Case</u>

In May 2006, Plaintiff initiated the instant action, requesting judicial review of the Commissioner's determination that Caffrey was ineligible for SSDI benefits.

On January 12, 2007, the Commissioner moved for judgment on the pleadings.  The Commissioner argued that the ALJ's conclusion that Caffrey retained the RFC to perform sedentary work <u>was</u> supported by substantial evidence.

On February 12, 2007, Caffrey cross-moved for judgment on the pleadings.  Caffrey argued that the ALJ's conclusion that Caffrey retained the RFC to perform sedentary work <u>was not</u> supported by substantial evidence.  Specifically, Caffrey challenged many of the evidentiary decisions upon which the ALJ based his decision to discount Caffrey's credibility.  Caffrey did not, however, argue at this point that the ALJ committed legal error by discrediting Caffrey solely because objective medical evidence did not corroborate his alleged symptoms.

The Court referred both of these motions to Magistrate Judge Freeman.

    5.  <u>Report and Objections</u>

On June 25, 2008, Magistrate Judge Freeman issued her Report recommending that this Court deny Caffrey's motion, and grant the

Commissioner's motion.  Magistrate Judge Freeman focused on evidentiary issues in reviewing the ALJ's credibility analysis, and she did not consider, as they were not brought to her attention, the legal requirements of § 404.1529, in detail.

On July 14, 2008, Caffrey filed timely objections to the Report's recommendations.  Caffrey's objections focused for the first time on the strictures of § 404.1529.  On August 29, 2008, the Commissioner filed a timely reply to Caffrey's objections.

The Court now reviews the Report in light of Caffrey's objections.

II.  <u>Analysis</u>

A.  <u>Legal Standards</u>

1.  <u>Review of a Magistrate Judge's Report and Recommendation</u>

When reviewing a report and recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

The court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997) (internal citations omitted).  Objections should be specific, and clearly aimed at particular findings in the magistrate judge's proposal.  <u>Camardo</u>

v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992).  To the extent that a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error.  See Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Vargas v. Keane, No. 93 Civ. 7852 (MBM), 1994 WL 693885 at *1 (S.D.N.Y. Dec. 12, 1994).

### 2.  Judicial Review of Commissioner's Decision

When reviewing a Commissioner's decision pursuant to 42 U.S.C. § 423(a)(1), a court must consider: (1) whether the Commissioner applied the correct legal principles in making her determination; and (2) whether substantial evidence supports the Commissioner's determination.  See 42 U.S.C. § 405(g); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  Where the law has been applied correctly, and where there is substantial evidence supporting the Commissioner's decision, the Court must uphold the Commissioner's decision, even if substantial evidence exists supporting other conclusions as well.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982);

Gernavage v. Shalala, 882 F. Supp. 1413, 1416 (S.D.N.Y. 1995).

It is the responsibility of the Court "to conduct a
searching inquiry and to scrutinize the entire record, having in
mind that the Social Security Act . . . is remedial in purpose."
McBrayer v. Secretary of Health & Human Servs., 712 F.2d 795,
798-99 (2d Cir. 1983).

    3.  Determining Whether an Individual is Disabled
Pursuant to the Social Security Act

    a.  Definition of Disability

A claimant will be found disabled, and therefore eligible
for SSDI benefits, only if she is "unable to do any substantially
gainful activity by reason of any medically determinable physical
or mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months."  20 C.F.R. § 404.1527.

    b.  Sequential Evaluation Process

In evaluating whether a claimant is disabled, an adjudicator
uses the five-step sequential evaluation process set forth in 20
C.F.R. § 404.1520.  Pursuant to this evaluation process, an
adjudicator considers, inter alia, (1) whether the claimant is
currently engaged in any substantial gainful activity; (2)
whether the claimant has a "severe impairment" that significantly
limits her physical or mental ability to do basic work
activities; (3) whether that impairment meets or equals an

11

impairment listed in Appendix 1 of the regulations; (4) whether the claimant's RFC permits her to do her past relevant work; and (5) whether the claimant's RFC permits her to perform any other work in the national economy.  20 C.F.R. § 404.1520.

The adjudicator's actions in determining Caffrey's RFC at the fifth step of this evaluation process are at issue in the instant case.  Pursuant to 20 C.F.R. § 404.1545, an adjudicator considers "all the relevant evidence in [the] case record" to determine a claimant's RFC.

### c.   Credibility Assessment

When evaluating whether a claimant succeeds at each step of the sequential evaluation process, an adjudicator will often have to weigh the credibility of a claimant's allegations about her symptoms.  Pursuant to § 404.1529, an adjudicator is required to evaluate in two separate steps whether a claimant's alleged symptoms, including pain, merit credence.  This credibility evaluation is separate from, but takes place in conjunction with, the five step sequential evaluation process described above.  20 C.F.R. § 404.1529(d).

### i.   First Step

At the first step of a credibility analysis, the adjudicator determines whether a medically determinable impairment exists that could reasonably be expected to produce the symptoms that the claimant alleges.  20 C.F.R. § 404.1529(b).  At this step,

the adjudicator relies <u>solely</u> on "objective medical evidence."
<u>Id.</u>  If objective medical evidence, such as medical tests and
laboratory findings, does not show the existence of a medically
determinable impairment that could reasonably be expected to
produce the symptoms alleged, the adjudicator must find that the
claimant is not disabled.  <u>Id.</u>  If a medically determinable
impairment is found, the adjudicator moves to the second step of
the analysis.

ii.  <u>Second Step</u>

At the second step of a credibility analysis, the
adjudicator evaluates the credibility of a claimant's allegations
about the intensity and persistence of her symptoms, and her
functional limitations.  20 C.F.R. § 404.1529(c).  At this step,
the adjudicator must consider <u>all</u> available evidence, "objective
medical evidence and other evidence," to determine if a
claimant's allegations are credible.[7]  <u>Id.</u>  An adjudicator is

---

[7] Other evidence includes "information about your prior work
record, your statements about your symptoms, evidence submitted
by your treating or nontreating source, and observations by our
employees and other persons."  20 C.F.R. § 404.1529.
    Additional factors an adjudicator must consider include: (1)
the individual's daily activities; (2) the location, duration,
frequency, and intensity of the individual's pain or other
symptoms; (3) factors that precipitate and aggravate the
symptoms; (4) the type, dosage, effectiveness, and side effects
of any medication that the individual takes or has taken to
alleviate pain or other symptoms; (5) treatment, other than
medication, the individual receives or has received for relief of
pain or other symptoms; and (7) any other factors concerning the
individual's functional limitations and restrictions due to pain
or other symptoms.  SSR 96-7p (explaining Social Security

expressly <u>prohibited</u> at this step from rejecting a claimant's allegations solely because objective medical evidence does not substantiate them.  According to § 404.1529, the SSA "will not reject your statements about the intensity and persistence or your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."  <u>Id.</u>

B.  <u>Application</u>

Caffrey's primary objection to the Report is that it fails to recognize that the ALJ erred at step two of the § 404.1529 credibility analysis, by rejecting Caffrey's statements about the intensity and persistence of his symptoms, and his resulting functional limitations, solely because they were not substantiated by objective medical evidence.[8]  The Court agrees

---

Regulation requirements for assessing the credibility of an individual's statements).

[8] Caffrey also objects to the Report for failing to recognize three other errors in the ALJ's analysis, namely: (1) that the ALJ erred in finding that Caffrey did not have a medically determinable impairment; (2) that the ALJ erred in finding that Caffrey's intermittent use of pain medication weakened the credibility of his allegations of pain; and (3) that the ALJ mischaracterized Caffrey's statements about his daily activities.  The Court finds these three objections to be without merit.
Caffrey's first objection lacks merit because it is premised on a misreading of the ALJ's opinion.  Caffrey argues that the ALJ improperly concluded that Caffrey did not have a medically determinable impairment, but such is not the case.  The ALJ found at step two of the sequential evaluation process that Caffrey <u>has</u>

with Caffrey.

As discussed above, an adjudicator is specifically prohibited at the second step of § 404.1529 from discounting a claimant's allegations solely because they are not supported by objective medical evidence.  Once an adjudicator has found that the claimant has a medically determinable impairment, the adjudicator must consider both "objective medical evidence" <u>and</u> "other evidence" in further evaluating a claimant's credibility.

In his written opinion, the ALJ correctly states this legal

---

a medically determinable impairment, namely "a right Achilles tendon injury with three resultant surgeries."  (R. 30.)

Caffrey's second objection similarly lacks merit.  Caffrey argues that the ALJ erred in concluding that Caffrey's intermittent usage of pain medication weakened, rather than bolstered, his credibility.  This objection creates an inconsistency in Caffrey's arguments; Caffrey argues, for the most part, that the ALJ improperly discredited his allegations <u>solely</u> because of the absence of objective medical evidence to support them.  As discussed below, the Court concludes that the ALJ did <u>not</u> in fact consider other evidence, such as Caffrey's usage of pain medication, in evaluating Caffrey's credibility, but rather, only in evaluating Caffrey's RFC.  This was legal error, as further discussed below, but not for the reason Caffrey argues here.

Finally, Caffrey's third objection is without merit.  Caffrey argues that the ALJ mischaracterized the evidence in stating that Caffrey was able to "go for walks" and "attend social functions."  Caffrey does state that he cannot go for walks, and indicates that he does not attend social functions outside the house.  (R. 287, 137-38.)  However, Caffrey also testifies that he is able to walk around the house and in the pool, attend his children's sporting events, and at least once in awhile, take his children to the library.  (R. 289-90, 293-94.)  Furthermore, elsewhere in the record, Caffrey indicates that walking is one of his methods of transportation.  (R. 136.)  The ALJ's depiction of Caffrey's daily activities is therefore supported by substantial evidence.

standard, that he must credit Caffrey's allegations about his symptoms to the extent they "can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 30.) Nonetheless, in actually applying the standard, the ALJ considers <u>only</u> whether Caffrey's allegations are supported by objective medical evidence. In so doing, the ALJ commits legal error.

In explaining his decision to partially discredit Caffrey, the ALJ states that Caffrey's allegations "are not found to be corroborated by <u>objective medical evidence</u> to the degree purported." (R. 31 (emphasis added).) The ALJ does not, as required by § 404.1529, analyze Caffrey's allegations in light of other evidence, such as Caffrey's work record or Dr. Small's opinions.

The ALJ also emphasizes that a disability "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not simply by one's statement of symptoms." (<u>Id.</u>) This statement of law is correct both as a general principle in determining whether a claimant is disabled, and at step one of a credibility analysis. It is not, however, correct at step two of a credibility analysis. Accordingly, the ALJ's inclusion of this statement of law at this point in his analysis further highlights the underlying error in his legal reasoning.

In response to Caffrey's objection, the Commissioner argues that the ALJ does, in fact, take into account other evidence, such as Dr. Small's opinions and Caffrey's daily activities, in evaluating Caffrey's credibility.  The Commissioner's argument is belied by the record.  The ALJ does consider this evidence in his opinion, but only in evaluating Caffrey's RFC, not in evaluating Caffrey's credibility.  The SSA regulations require that he consider such evidence in both instances.

The Court notes that whether the ALJ applied § 404.1529 correctly matters a great deal here, as substantial evidence exists on the record supporting more than one outcome.  The ALJ's decision, then, to partially discredit Caffrey's allegations may have been outcome determinative.

The Court concludes that the ALJ committed legal error by incorrectly applying § 404.1529.  The Court vacates the decision below, and remands for further proceedings consistent with this opinion.

III.   Conclusion

For the reasons stated above, the Court (1) GRANTS Caffrey's motion for judgment on the pleadings (D.E. 9); (2) DENIES the Commissioner's motion for judgment on the pleadings (D.E. 7); (3) VACATES the decision below; and (4) REMANDS this case, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further proceedings consistent with this opinion.  The Clerk of the Court

is directed to close this case; any pending motions are moot.

SO ORDERED.

Dated:     New York, New York
           June 30, 2009

                                    _Kimba M. Wood_

                                    KIMBA M. WOOD
                              United States District Judge

18